**REESE LLP**
Michael R. Reese (California State Bar No. 206773)
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10001
Tel:  212-643-0500
Fax: 212- 253-4272

**HALUNEN LAW**
Melissa W. Wolchansky (to be admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
Charles D. Moore (to be admitted *pro hac vice*)
*Moore@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile:  (612) 605-4099


*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Brittany Stanton, on behalf of herself and all others similarly situated, | Case No. _____ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| Sargento Foods, Inc. | |
| Defendant. | |

Brittany Stanton ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Sargento Foods, Inc. ("Sargento" or "Defendant") and alleges as follows. Plaintiff bases the allegations in this Class Action Complaint on personal knowledge as to matters related to Plaintiff and on information and belief as to all other matters, through the investigation of Plaintiff's counsel. Plaintiff believes substantial evidentiary support exists for the allegations set forth herein, and she seeks a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      Plaintiff alleges, on behalf of herself and all others similarly situated (the "Class," as defined below), that from September 19, 2012, to the date of class certification (the "Class Period"), Defendant deceptively and misleadingly marketed, and continues to deceptively and misleadingly market, Sargento brand cheese products (defined below) as "Natural" when, in fact, those cheese products contain ingredients derived using unnatural genetically modified organisms ("GMOs"); /or from cows given unnatural recombinant Bovine Soatotropin ("rbST"); or use the methodologies to raise the cows and obtain their milk detailed below in paragraphs 39-40; or, does not meet the organic standard for cheese.[1]

2.      The deceptive and misleading cheese products include, but are not limited to the following, all of Defendant's cheese products prominently labeled as "Natural":

---

[1] As used herein, "genetically modified" refers to the use of molecular biology techniques, such as recombinant DNA techniques, to delete genes or to transfer genes for particular qualities from one species to another. In contrast to conventional breeding techniques, modern molecular biology techniques permit the insertion into an organism of genetic material from an unrelated species, such as the DNA of a fish into a tomato. *See* Ed Wallis, *Fish Genes into Tomatoes: How the World Regulates Genetically Modified Foods*, 80 N.D. L. Rev. 421 (2004).

CLASS ACTION COMPLAINT

[2]

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Natural Muenster**



**Natural Sharp Cheddar**

**Natural Blends**

(collectively, the "Products").[2]

      3.     During the Class Period, Defendant systematically markets and advertises the Products, throughout the United States, as "Natural" on the Products' packaging, such that any consumer who purchased the Products, or who purchases the Products now or in the future, is exposed to Defendant's "Natural" claim.

---

[2] Defendant may discontinue offering some cheese products and regularly introduces cheese products that are also falsely and misleadingly labeled "Natural." Defendant may also market and sell additional substantially similar cheese products of which Plaintiff is unaware. Plaintiff will ascertain the identity of these additional products through discovery.

4.     Defendant's "Natural" claim is deceptive and misleading because the Products contain ingredients derived from genetically modified organisms, which are not natural. Specifically, all of the Products are produced from casein, a protein in milk. On information and belief, the cows that produce the casein in the Products are fed GMO corn and/or GMO soy, or given rbST, which are not natural. Thus, the casein Defendant uses to make the Products is not "Natural," and the final cheese Products are not "Natural."

5.     Defendant misleads and deceives reasonable consumers, including Plaintiff and the other Class members, by portraying the Products as "Natural" when they contain non-natural ingredients and uses non-natural means to increase milk yields as described below in paragraphs 39-40.

6.     Defendant's conduct harms consumers by inducing them to purchase Products containing non-natural ingredients on the false premise that the Products are "Natural," when the consumers would not otherwise purchase the Products and/or pay a premium price for the Products, if they knew that they are not in fact "Natural."

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of Washington and Defendant is a citizen of the State of Wisconsin; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Defendant for reasons including but not limited to the following: Plaintiff's claims arise out of Defendant's conduct within this District. As a result of Defendant's marketing, distributing, promoting and/or selling, either directly or indirectly through third parties or related entities, of the Products to purchasers throughout the United States, the Defendant obtains the benefits of the laws of this state and profits from commerce within this state. Defendant, through the promotion and marketing of the Products, conducts systematic and continuous business activities in and throughout this state and otherwise

1    intentionally avails itself of the market of this state.

2        9.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), as a substantial part

3    of the events or omissions giving rise to Plaintiff's claims occurred in this District.

4                                    **PARTIES**

5    **Plaintiff**

6        10.     Brittany Stanton resides in Seattle, Washington. From approximately July 2013 to

7    June 2015 Plaintiff purchased the Products from various retail locations in San Diego, California,

8    including Vons grocery stores. From approximately July 2015 to January 2016, Plaintiff

9    purchased the Products from various retail locations in San Francisco, California, including

10   Safeway grocery stores. Plaintiff also has purchased the Products from various retail locations in

11   Seattle, Washington during the Class Period. The packaging of the Products Plaintiff purchased

12   contain the representation that they were "Natural." Plaintiff made these purchases in reliance on

13   the representations on the Product packaging that the Products were "Natural." Plaintiff does not

14   consider a product containing and/or derived from genetically modified ingredients; or is from

15   cows given unnatural recombinant Bovine Soatotropin ("rbST"); or use the methodologies to

16   raise the cows and obtain their milk detailed below in paragraphs 39-40; or, does not meet the

17   organic standard for cheese to be "Natural." If the Products were actually "Natural," as

18   represented on the Products' labels, Plaintiff would continue to purchase the Products.

19       11.     Had Defendant not made the false, misleading, and deceptive representation that

20   the Products were "Natural," Plaintiff would not have been willing to pay the same amount for

21   the Products, and, consequently, she would not have been willing to purchase the Products.

22   Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have

23   had she known the truth about the Products. The Products Plaintiff received were worth less than

24   the Products for which she paid. Plaintiff was injured in fact and lost money as a result of

25   Defendant's improper conduct.

26

27

28                          CLASS ACTION COMPLAINT
                                      [6]

**Defendant Sargento Foods, Inc.**

12.     Sargento Foods, Inc. ("Sargento") is incorporated under the laws of the State of Wisconsin, with its principal place of business at One Pernickety Place, Plymouth, Wisconsin. Defendant manufacturers, markets, and sells cheese products under the brand name Sargento.

## FACTUAL ALLEGATIONS

### Defendant Advertises and Markets the Products as "Natural"

13.     A consumer survey showed that "nearly seven in ten consumers were 'very' or 'somewhat' interested in natural products."[3]

14.     In another consumer survey, "'natural ingredients' ranked second only to 'taste' in influencing consumer purchasing behavior."[4]

15.     This desire is translated into financial gain, as each year consumers purchase billions of dollars' worth of natural products. In 2010, U.S. consumers purchased $39 billion worth of natural/organic food products, up from $33.7 billion in 2009.[5] Defendant, like many food manufacturers, recognized the growing consumer desire for natural food products.

16.     To capitalize on consumers' rising demand for natural food, Defendant labels and markets the Products as "Natural," thereby setting the Products apart from other competing cheese products.

17.     Throughout the Class Period, Defendant systematically marketed and advertised the Products as "Natural" on the Products' packaging. Defendant prominently places the words "Natural" in a central location on the labeling of every package of the Products, as the representative images below illustrate:

---

[3] Bruce Horovitz, Frito-Lay turns to nature's path, USA TODAY, Dec. 28, 2010, *available at* http://www.usatoday.com/printedition/news/20101228/fritonatural28_st.art.htm.

[4] *Id.*

[5] Natural Products Association, http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociation.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8.

18.    By consistently and systematically marketing and advertising the Products as "Natural" on the Products' packaging, throughout the Class Period, Defendant ensures that all consumers purchasing the Products are, and all consumers purchasing the Products in the future will be, exposed to its misrepresentation that the Products are "Natural."

**Defendant's Products Contain Ingredients Derived from GMOs**

19.    The Products contain ingredients derived from GMOs.

20.    The USDA does not allow animal products to be certified as "organic" if the animals consume GMO feed.[6] The USDA has explained its logic in the context of dairy production. In describing the production of organic milk from a cow grazing in a pasture, it stated that "the milk from that dairy cow is analogous to the crops harvested from the same field[.]"[7] The USDA made clear that if a cow consumes GMO grass, the milk the cow produces is not "organic."[8] The USDA has recognized that the characteristics of an animals' feed (such as

---

[6] Miles McEvoy, National Organic Program Deputy Administrator, United States Department of Agriculture, Organic 101: Can GMOs Be Used in Organic Products?, http://blogs.usda.gov/2013/05/17/organic-101-can-gmos-be-used-in-organic-products/.

[7] National Organic Program—Revisions to Livestock Standards Based on Court Order (Harvey v. Johanns) and 2005 Amendment to the Organic Foods Production Act of 1990 (OFPA), 71 Fed. Reg. 24,820, 24,823 (Apr. 27, 2006).

[8] *Id.*

CLASS ACTION COMPLAINT
[8]

whether the feed is GMO) will affect the characteristics of the animals' end products.

21.     As of 2012, approximately 88% of the corn planted in the United States was grown from a GM seed, while 93% of the soy planted in the United States was from GM seed.[9]

22.     Thus, on information and belief, the cows that produce the casein that Defendant uses to make the Products are fed GMO corn and/or GMO soy, which is not natural.

**<u>GMOs Are Not "Natural"</u>**

23.     GMOs are organisms in which the genetic material (*i.e.*, DNA) has been altered in a way that does not occur naturally, allowing the organism to exhibit traits that would not appear in nature. "Herbicide tolerant crops contain new genes that allow the plant to tolerate these herbicides. The most common herbicides-tolerant crops (cotton, corn, soybeans, and canola) are those that are resistant to glyphosate . . . ."[10,11]

24.     According to many sources, including industry, government and health organizations, GMOs are not "Natural." GMOs are "created" artificially in a laboratory through genetic engineering.

25.     As recently as December 28, 2014, Monsanto Company, the world's dominant producer of genetically modified seeds, defined GMOs as "[p]lants or animals that ***have had their genetic makeup altered to exhibit traits that are not naturally theirs***. In general, genes are taken (copied) from one organism that shows a desired trait and transferred into the genetic code

---

[9] Clive James, *Global Status of Commercialized Biotech/GM Crops: 2012*, Int. Ser. For the Acquisition of Agri-Biotech Applications, *available at* http://www.isaaa.org/resources/publications/briefs/44/download/isaaa-brief-44-2012.pdf

[10] U.S. Environmental Protection Agency, EPA's Regulation of Biotechnology for Use in Pest Management, http://www.epa.gov/oppbppd1/biopesticides/reg_of_biotech/eparegofbiotech.htm. Glyphosate has been recognized as probably carcinogenic to humans by the International Agency for Research on Cancer, http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf.

[11] Glyphosate has been recognized as probably carcinogenic to humans by the International Agency for Research on Cancer, http://www.iarc.fr/en/media-centre/iarcnews/pdf/MonographVolume112.pdf.

of another organism."[12]

26.     Romer Labs, a company that provides diagnostic solutions to the agricultural industry, discusses and defines GMOs as follows: "Agriculturally important plants are often genetically modified by the insertion of DNA material from outside the organism into the plant's DNA sequence, allowing the plant to *express novel traits that normally would not appear in nature*, such as herbicide or insect resistance. Seed harvested from GMO plants will also contain these modifications."[13]

27.     International bodies, such as the World Health Organization, define GMOs as "organisms (i.e. plants, animals or microorganisms) in which the genetic material (DNA) *has been altered in a way that does not occur naturally* by mating and/or natural recombination."[14]

28.     The United States Environmental Protection Agency has distinguished conventional breeding of plants from genetic engineering using modern scientific techniques, as follows:

> **4.     What is the difference between plant-incorporated protectants produced through genetic engineering and those produced through conventional breeding?**
>
> **Conventional breeding** is a method in which genes for pesticidal traits are introduced into a plant through natural methods, such as cross-pollination. For a plant-incorporated pesticide, one would breed a plant that produces a pesticide with a sexually compatible plant that does not possess this property but possesses other properties of interest to the breeder, *e.g.*, sweeter fruit. Then, out of

[12]   *Compare* Internet Archive Wayback Machine, Monsanto Company, Glossary, https://web.archive.org/web/20141228155838/http://www.monsanto.com/newsviews/Pages/gloss ary.aspx#g (Monsanto Company's definition of "Genetically Modified Organisms (GMO)" as of December 28, 2014) (emphasis added) *with* Monsanto Company, Glossary, www.monsanto.com/newsviews/pages/glossary.aspx#g (Monsanto Company's current definition of "Genetically Modified Organisms (GMO)").

[13]   Romer Labs, Making the World's Food Safer - GMO, http://www.romerlabs.com/en/knowledge/gmo/ (last visited May 19, 2015) (emphasis added).

[14]   The World Health Organization, Frequently asked questions on genetically modified foods, http://www.who.int/foodsafety/areas_work/food-technology/faq-genetically-modified-food/en/ (emphasis added).

the offspring, the breeder would choose the offspring plant that produces the pesticide, and therefore expresses the desired pesticidal trait, as well as producing sweeter fruit.

**Genetically engineered** plant-incorporated protectants are created through a process that utilizes several different modern scientific techniques to introduce a specific pesticide-producing gene into a plant's DNA genetic material. For example, a desired gene that produces a desired pesticides (*e.g.*, the insecticidal protein *Bt* from the bacterium, *Bacillus thuringiensis*) can be isolated from another organism, such as a bacterium, and then inserted into a plant. The desired gene becomes part of the plant's DNA. The plant then expresses the incorporated gene and produces the pesticidal protein as it would one of its own components.[15]

29.   As Consumers Union explained:

Genetic engineering is not just an extension of conventional breeding. In fact, it differs profoundly. As a general rule, conventional breeding develops new plant varieties by the process of *selection*, and seeks to achieve expression of genetic material which is already present within a species. . . . Conventional breeding employs processes that occur in nature, such as sexual and asexual reproduction. . . .

Genetic engineering works primarily through *insertion* of genetic material, although gene insertion must also be followed up by selection. This insertion process does not occur in nature.[16]

30.   As the definitions and descriptions above from a wide array of industry, government, and health organizations indicate, GMOs are not "Natural" because they do not naturally occur. Scientists create GMOs artificially in a laboratory through genetic engineering.

[15]   Office of Prevention, Pesticides, and Toxic Substances, United States Environmental Protection Agency, Questions & Answers, Biotechnology: Final Plant-Pesticide/Plaint Incorporated Protectants (PIPs) Rules 3 (2001), *available at* http://www.epa.gov/scipoly/biotech/pubs/qanda.pdf (bold in original).

[16]   Michael K. Hansen, Consumer Policy Institute / Consumers Union, Genetic Engineering Is Not An Extension Of Conventional Plant Breeding; How genetic engineering differs from conventional breeding, hybridization, wide crosses and horizontal gene transfer 1 (2000), *available at* http://consumersunion.org/wp-content/uploads/2013/02/Wide-Crosses.pdf (emphasis in original).

CLASS ACTION COMPLAINT
[11]

**Defendant's Products Contain Ingredients Derived from Animals Given rbST**

31.     Bovine somatotropin ("bST") is an animal drug based on the growth hormone natural produced in cattle.[17] During World War II, English scientists attempted to increase milk production by injecting bST into milk cows.[18] However, it did not become technically possible and economically feasible to produce large quantities of bST until the 1980s via biotechnology.[19] The new biotechnology bST is known as "recombinant bST" or "rbST."

32.     Like GMO corn and soy, rbST is produced through recombinant biotechnology, and therefore, for the reasons discussed above, is not natural.

33.     On information and belief, the cows that produce the casein that Defendant uses to make the Products are given rbST, which is not natural.[20]

**Reasonable Consumers Do Not Believe Products Containing Ingredients Derived from GMOs or rbST Are "Natural"**

34.     By claiming the Products are "Natural," Defendant deceives and misleads reasonable consumers.

35.     Defendant's packaging of the Products unequivocally demonstrates its intent to persuade consumers that the Products are "Natural."

36.     In fact, reasonable consumers, including Plaintiff, purchase the Products based upon the belief that they are "Natural." However, a reasonable consumer would not deem the Products "Natural" if he/she knew that the Products contain non-natural ingredients.

---

[17] FDA, http://www.fda.gov/animalveterinary/safetyhealth/productsafetyinformation/ucm055435.htm (last visited Sept. 14, 2015).

[18] *Id.*

[19] *Id.*

[20] *Is your cheese full of hormones?*, CLEAN EATING IN TEXAS (Aug. 8, 2012), *available at* https://cleaneatingintexas.wordpress.com/2012/08/08/is-your-cheese-full-of-hormones/;     Are Your Dairy Products Hormone Free? (30+ Diary Brands that Are), MOMMY GOES GREEN (Apr. 22, 2013), *available at* http://mommygoesgreen.com/2013/04/are-your-dairy-products-hormone-free-30-dairy-brands-that-are/.

37.    By of example, a 2014 consumer survey confirmed that a majority (64%) of consumers think that the "natural" label on meat or poultry products currently means the animals' feed contained no GMOs.[21] The same survey confirmed that a majority (68%) of consumer think that the "natural" label on meat or poultry products currently means the animals' are not given artificial growth hormones, such as rbST.[22]

38.    According to another consumer survey, "[e]ighty-six percent of consumers expect a 'natural' label to mean processed foods do not contain any artificial ingredients."[23]Similarly, reasonable consumers believe that if a cow consumes GMO corn or soy, or are given rbST, then the cow's end products are not "Natural." Thus, reasonable consumers believe that if a cow consumes GMO grass, corn, or soy, or is given rbST, and then produces cream, the casein is not "Natural" and products derived from the casein, such as cheese, are likewise not "Natural."

39.    Furthermore, upon information and belief, dairy cows, which produce the milk used to make the Products, are fed grain (instead of grass) and forced into unnatural continuous birthing and lactation through genetic manipulation, antibiotics, and hormones such as bovine growth hormone (rBGH).[24] A reasonable consumer would not consider this process to be natural and, thus, would not consider milk from these dairy cows to be natural. As stated in "Inside the Milk Machine: How Modern Dairy Works":

---

[21] Consumer Reports National Research Center, Food Labels Survey: 2014 Nationally-Represented Phone Survey 6 (2014), *available at* http://www.greenerchoices.org/pdf/ConsumerReportsFoodLabelingSurveyJune2014.pdf.
[22] *Id.*

[23] Urvashi Rangan, Comments of Consumers Union on Proposed Guides for Use of Environmental Marketing Claims, 16 C.F.R. Part 260, Notice of the Federal Trade Commission (2010), *available at* www.ftc.gov/sites/default/files/documents/public_comments/guides-use-environmental-marketing-claims-project-no.p954501-00289%C2%A0/00289-57072.pdf   (also accessible as Comment 58 at http://www.ftc.gov/policy/public-comments/initiative-353).

[24] *See, e.g.*, The Big Business of Dairy Farming: Big Trouble for Cows, *available at* http://advocacy.britannica.com/blog/advocacy/2007/06/dairy-farming/; got misery? Milk does., Mercy for Animals, *available at* http://www.gotmisery.com/readmore.php

CLASS ACTION COMPLAINT
[13]

With the rise of factory farming, milk is now a most unnatural operation. The modern dairy farm can have hundreds, even thousands of cows. Today's average dairy cow produces six to seven times as much milk as she did a century ago. Cows spend their lives being constantly impregnated in order to produce milk. Bulls can be difficult, so the majority of dairy cows are now artificially inseminated. Sex is a thing of the past. Antibiotics cure infections. Hormones have been designed to increase milk production. The cows are pushed hard for this production, and, after roughly three or four years, their production slackens and they are sold off for hamburger meat.[25]



And as stated in "Dairy Farming: Still Big Business, Big Trouble for Cows":

Cows naturally eat grass, which is how the bucolic image of dairy herds grazing in pastures became so well recognized. A diet of grass, however, is high-fiber and of low nutritional density and does not result in a high milk yield. The milk produced from this diet would be enough to feed a calf, but it is not enough to satisfy market needs. So modern dairy cows are fed a low-fiber, high-protein diet of grains such as corn and soy along with animal by-products. As ruminants, they have stomachs with four compartments that are made to process high-fiber grass; partially digested food, or cud, is regurgitated to again be chewed and swallowed, a process that occupies cows for up to eight hours a day. The feed given to cows on dairy farms, however, does not

[25] *See* Inside the Milk Machine: How Modern dairy Works *available at* http://modernfarmer.com/2014/03/real-talk-milk/

lend itself to this process and is thus difficult for them to digest, causing health problems. In addition, the use of high-protein diets—because they contain animal protein, including, in the past, tissue from diseased cows—has been implicated in the proliferation of mad cow disease.

Another tool to increase milk yield is the use of the genetically engineered growth hormone rBGH (recombinant bovine growth hormone). This hormone contributes to an average milk production of 100 pounds of milk per cow per day, 10 times as much milk as a calf would need. ***Maintaining such high production for such an unnatural length of time exhausts the cows' bodies and depletes them nutritionally to such a degree that even the nutritionally dense feed cannot compensate.*** Copious milk production causes cows' bones to become severely deficient in calcium. They thus become prone to fracture, and the result is a sharp increase in the number of "downed" cows, or "downers," a general term for farm and food animals who collapse, unable to stand up again, and must be destroyed.[26]

 

40.     On the other hand, organic milk must come from a certified organic cow, which may not consume animal drugs, including hormones, to promote growth and must receive 100% organic feed. 7 CFR § 205.237. Consumers equate the word "natural" with "organic." Therefore, reasonable consumers would not consider milk from cows who are given growth hormones or antibiotics (or products derived therefrom) to be natural. Similarly, reasonable consumers would

---

[26] *See, e.g.*, The Big Business of Dairy Farming: Big Trouble for Cows, *available at* http://advocacy.britannica.com/blog/advocacy/2007/06/dairy-farming/

CLASS ACTION COMPLAINT
[15]

not consider milk from cows who are fed GMO feed (or products derived therefrom) to be natural.

**Plaintiff and the Class Members Reasonably Relied on Defendant's Misrepresentations**

41.     Consumers rely on food label representations and information in making purchasing decisions.

42.     The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendant's awareness that "Natural" claims are material to consumers.

43.     Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

44.     Plaintiff and the Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

45.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

**Defendant's Wrongful Conduct Caused Plaintiff's and the Class Members' Injuries**

46.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injures Plaintiff and the Class members in that they:

    a.     Pay a sum of money for Products that are not what Defendant represents;

    b.     Pay a premium price for Products that are not what Defendant represents;

    c.     Are deprived of the benefit of the bargain because the Products they purchase are different from what Defendant warrant;

    d.     Are deprived of the benefit of the bargain because the Products they purchase have less value than what Defendant represent;

e.      Do not receive Products that measured up to their expectations, which Defendant creates;

f.      Ingest a substance that is of a different quality than what Defendant promises; and

g.      Are denied the benefit of the beneficial properties of the natural foods Defendant promises.

47.      Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members are not willing to pay the same amount for the Products they purchase, and, consequently, Plaintiff and the Class members are not willing to purchase the Products.

48.      Plaintiff and the Class members pay for Products that are "Natural" but receive Products that are not "Natural." The Products Plaintiff and the Class members receive are worth less than the Products for which they pay.

49.      Based on Defendant's misleading and deceptive representations, Defendant was able to, and did, charge a premium price for the Products over the cost of competitive products not bearing a "Natural" label.

50.      In making the false, misleading, and deceptive representations and omissions described herein, Defendant knows and intends that consumers will pay a premium for Products labeled "Natural" over comparable products not so labeled.

51.      Plaintiff and the Class members all pay money for the Products. However, Plaintiff and the Class members do not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions. Plaintiff and the Class members purchase, purchase more of, and/or pay more for, the Products than they would if they knew the truth about the Products. Consequently, Plaintiff and the Class members suffer injury in fact and lose money as a result of Defendant's wrongful conduct.

52.      By way of example, Sargento shredded mild cheddar cheese costs $2.74 for an 8

CLASS ACTION COMPLAINT
[17]

1  ounce bag, or $0.34 cents per ounce, at Walmart in Bellevue, Washington.[27]

2      53.    Alternative cheese products, that do not contain the false and misleading

3  "Natural" representation, cost less than Sargento's Brand cheese. For example, Great Value Mild

4  Shredded Cheese costs $2.22 per 8 ounce bag, or $0.28 per ounce, at Walmart in Bellevue,

5  Washington.[28]

6      54.    Thus, to purchase Sargento's Brand Cheese, which Defendant falsely and

7  misleadingly labels "Natural," Plaintiff and the Class members pay a premium over comparable

8  cheese products that are not labeled "Natural."

9  **CLASS ALLEGATIONS**

10

11      55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

12  Procedure 23. Plaintiff seeks to represent the following classes:

13      a.    The "Washington Class" which consists of: All consumers within
   the State of Washington who purchased the Products during the

14  applicable liability period for their personal use, rather than for
   resale or distribution. Excluded from the Washington Class are

15  Defendant's current or former officers, directors, and employees;
   counsel for Plaintiff and Defendant, and the judicial officer to

16  whom this lawsuit is assigned.

17      b.    The "California Class" which consists of: All consumers within the

18  State of California who purchased the Products during the
   applicable liability period for their personal use, rather than for

19  resale or distribution. Excluded from the California Class are
   Defendant's current or former officers, directors, and employees;

20  counsel for Plaintiff and Defendant, and the judicial officer to
   whom this lawsuit is assigned.

21

22      c.    The "Nationwide Class" which consists of: All consumers within
   the United States who purchased the Products during the

23  applicable liability period for their personal use, rather than for

24  [27]    Walmart, https://www.walmart.com/ip/Sargento-Off-the-Block-Mild-Cheddar-Fine-Cut-

25  Shredded-Cheese-8-oz/35453870.

26  [28]    Walmart, http://www.walmart.com/ip/Great-Value-Mild-Shredded-Cheddar-Cheese-8-
   Oz/10452420.

27

28  CLASS ACTION COMPLAINT
   [18]

resale or distribution. Excluded from the Nationwide Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant, and the judicial officer to whom this lawsuit is assigned.

d.    The "Multi-State Class," which consists of: All consumers in Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maine, Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, West Virginia, or Wyoming who purchased the Products during the applicable liability period for their personal use, rather than for resale or distribution. Excluded from the Multi-State Class are Defendant's current or former officers, directors, and employees; counsel for Plaintiff and Defendant; and the judicial officer to whom this lawsuit is assigned.

(collectively, the "Class")

56.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

**Numerosity—Federal Rule of Civil Procedure 23(a)(1)**

57.    The members of the Class are so numerous that individual joinder of all Class members is impracticable. While the exact number of Class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that each Class numbers in the thousands.

58.    Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include United States Mail, electronic mail, Internet postings, and/or published notice.

CLASS ACTION COMPLAINT
[19]

**Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and (b)(3)**

59.     This action involves common questions of law or fact that predominate over any questions affecting individual Class members.

60.     All Class members are exposed to Defendant's deceptive and misleading advertising and marketing claims that the Products are "Natural" because those claims are on the packaging of each and every Product.

61.     Furthermore, common questions of law or fact include:

a.      Whether Defendant materially misrepresented to the class members that the Products are "Natural";

b.      Whether Defendant's misrepresentations and omissions are material to reasonable consumers;

c.      Whether Defendant's labeling, marketing, and sale of the Products constitutes an unfair and deceptive business practices;

d.      Whether Defendant's conduct described above constitutes a breach of warranty;

e.      Whether Plaintiff and the Class members are entitled to actual, statutory, or other forms of damages and other monetary relief; and

f.      Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to injunctive relief and equitable restitution.

62.     Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

**Typicality—Federal Rule of Civil Procedure 23(a)(3)**

63.     Plaintiff's claims are typical of the claims of other Class members because, among other things, Defendant injures all Class members through the uniform misconduct

CLASS ACTION COMPLAINT
[20]

described herein, and all Class members are subject to Defendant's false, deceptive, misleading, and unfair advertising and marketing practices and representations, including the false claim that the Products are "Natural."

64.     Further, there are no defenses available to Defendant that are unique to Plaintiff.

**Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4)**

65.     Plaintiff will fairly and adequately represent and protect the interests of the members of each class. Plaintiff does not have any interests that are adverse to those of the Class members. Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

**Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2)**

66.     Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the Class members, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Class as a whole.

**Superiority—Federal Rule of Civil Procedure 23(b)(3)**

67.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

68.     The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant has acted or refused to act on grounds generally applicable to each Class, thereby making appropriate final injunctive or equitable relief with respect to each Class as a whole.

## CLAIMS FOR RELIEF
## FIRST CLAIM FOR RELIEF
### Violation of the Washington Consumer Protection Act – RCW §§ 19.86, *et seq.*
### On Behalf of the Washington Class

69.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

70.     This claim arises under the Washington Consumer Protection Act, RCW §§ 19.86, *et seq.* ("CPA")

71.     At all relevant times, Defendant engaged in "trade" and/or "commerce" within the meaning of RCW § 19.86.010.

72.     The CPA broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or business. RCW § 19.86.020.

73.     Defendant makes uniform representations that the Products are of a particular standard, quality, or grade when they are not, and, as set forth above, make false and/or misleading statements regarding the "Natural" quality and characteristics of the Products that, as set forth above, are unfair and deceptive, had and continue to have the capacity to deceive the public, cause injury to Plaintiff and the Washington Class, and are made in violation of the CPA.

74.     As alleged above, Defendant violated the CPA by making false representations on the Products' packaging and in marketing (as detailed herein) that the Products are "Natural," when in fact they contain highly processed and/or non-natural ingredients, or come from cows given unnatural recombinant Bovine Soatotropin ("rbST"); or use the methodologies to raise the cows and obtain their milk detailed above in paragraphs 39-40; or, does not meet the organic standard for cheese.

75.     This type of information is relied upon by consumers in making purchasing decisions and is fundamental to the decision to purchase the Products.

76.     Defendant represented and continues to represent its Products in a deceptive and misleading manner as described herein. These representations are important to reasonable consumers, such as Plaintiff and members of the Washington Class, in deciding whether to

purchase the Products. Defendant knew or should have known these representations are patently false and/or misleading.

77. Plaintiff and members of the Washington Class have each been directly and proximately injured by the conduct of Defendant, and such injuries include economic injury for the loss of sums which constitute payment for the Products they purchase. Indeed, Plaintiff and the Washington Class lose money or property when they purchase and/or pay a premium price for the Products. Plaintiff and the Washington Class would not pay as much or purchase the Products at all if they knew they are not "Natural" as promised.

78. At all times material, Defendant engages in a scheme of making false representations on the Products' packaging and in marketing (as detailed above) by misrepresenting the "Natural" quality. In fact, Defendant knows that these representations are false and misleading. In engaging in this conduct, Defendant misrepresents important characteristics of its Products—i.e., the "Natural" quality. Defendant intends that Plaintiff and members of the Washington Class rely on its deceptive acts and misrepresentations, and Plaintiff and the members of the Washington Class are actually deceived by Defendant's representations regarding the "Natural" quality of the Products.

79. The representations made by Defendant detrimentally affect the public interest. There is an inherent public interest in the truthful marketing and sales of products that operate as advertised. The Products are not of the "Natural" quality as advertised and thus negatively affected the public interest.

80. By the conduct described herein, Defendant engages in unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of business, trade, or commerce.

81. On September 19, 2016, Plaintiff, through counsel, sent a demand letter to Defendant that provided notice of Defendant's violation of the CPA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiff would

1   file a complaint seeking damages in accordance with the CPA. Defendant failed to comply with

2   the letter. For the foregoing reasons, Plaintiff, individually and on behalf of all other members of

3   the Washington Class, seeks compensatory damages, punitive damages, and restitution of any ill-

4   gotten gains due to Defendant's acts and practices.

5         82.     THEREFORE, Plaintiff prays for relief as set forth below.

6

**SECOND CLAIM FOR RELIEF**
**Violation of the Consumers Legal Remedies Act, CIV. CODE § 1750 *et seq.***

7                    **On Behalf of the California Class**

8         83.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth

9   herein.

10         84.     Plaintiff brings this claim for violation of the Consumers Legal Remedies Act,

11   CIV. CODE § 1750 *et seq.* ("CLRA"), on behalf of the California Class.

12         85.     Under the CLRA, "goods" means "tangible chattels bought or leased for use

13   primarily for personal, family, or household purposes[.]" CIV. CODE § 1761(a).

14         86.     The Products are "goods" under Civil Code section 1761(a).

15         87.     Under the CLRA, "consumer" means "an individual who seeks or acquires, by

16   purchase or lease, any goods or services for personal, family, or household purposes." *Id.* §

17   1761(d).

18         88.     Plaintiff and the California Class members are "consumers" under Civil Code

19   section 1761(d).

20         89.     Under the CLRA, "person" means "an individual, partnership, corporation,

21   limited liability company, association, or other group, however organized." *Id.* § 1761(c).

22         90.     Defendant is a "person" under Civil Code section 1761(c).

23         91.     Under the CLRA, "transaction" means "an agreement between a consumer and

24   another person, whether or not the agreement is a contract enforceable by action, and includes

25   the making of, and the performance pursuant to, that agreement." *Id.* § 1761(e).

26         92.     Defendant, on the one hand, and Plaintiff and the California Class members, on

27

28                        CLASS ACTION COMPLAINT

the other hand, engaged in "transactions" as the CLRA defines that term because, among other reasons, Defendant agreed to sell, and pursuant to that agreement sold, the Products to Plaintiff and the California Class members.

93.    Defendant's actions, representations, and conduct have violated, and continue to violate, the CLRA because they extend to transactions that are intended to result, or that have resulted, in the sale of goods to consumers.

94.    Under section 1770(a) of the CLRA:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

*   *   *   *   *

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

*   *   *   *   *

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

*   *   *   *   *

(9) Advertising goods or services with intent not to sell them as advertised.

*   *   *   *   *

(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

*Id.* § 1770(a).

95.    As alleged above, Defendant has violated, and continue to violate, Civil Code

section 1770(a)(5) by representing the Products have characteristics, uses, benefits, and qualities which they do not. Specifically, Defendant represents the Products are "Natural," when, in fact, the Products contain non-natural ingredients.

96. Further, as alleged above, Defendant has violated, and continue to violate, Civil Code section 1770(a)(7) by representing the Products are of a particular quality when they are of another. Specifically, Defendant represent that the Products are "Natural," when, in fact, the Products contain non-natural ingredients; or come from cows given unnatural recombinant Bovine Soatotropin ("rbST"); or use the methodologies to raise the cows and obtain their milk detailed above in paragraphs 39-40; or, does not meet the organic standard for cheese.

97. Further, as alleged above, Defendant has violated, and continue to violate, Civil Code section 1770(a)(9) by advertising the Products as "Natural" with the intent to sell Products that are not actually "Natural."

98. Finally, as alleged above, Defendant has violated, and continues to violate, Civil Code section 1770(a)(16) by representing that the Products they sold Plaintiff and the California Class members are "Natural," when, in fact, the Products are not.

99. Defendant violates the CLRA by representing through its Product marketing the Products, as described above, when it knows, or should know, that the representations are unsubstantiated, false, and misleading.

100. Plaintiff and the California Class members believe Defendant's representations that the Products are "Natural." Plaintiff and the California Class members would not purchase the Products, but for Defendant's misleading statements about the Products being "Natural."

101. Plaintiff and the California Class members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Products as "Natural." Plaintiff and the California Class members pay for "Natural" Products but do not receive such Products, since the Products contain non-natural ingredients.

102. On information and belief, Defendant's actions were willful, wanton, and fraudulent.

103.   On information and belief, officers, directors, or managing agents at Defendant authorized the use of the misleading statements about the Products.

104.   CLRA SECTION 1782 NOTICE. On September 19, 2016, Plaintiff, through counsel, sent a CLRA demand letter to Defendant that provided notice of Defendant's violation of the CLRA and demanded Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false, and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages in accordance with the CLRA. Defendant failed to comply with the letter. For the foregoing reasons, pursuant to Civil Code section 1780(a)(3), Plaintiff, individually and on behalf of all other members of the California Class, seeks compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

105.   Pursuant to Civil Code sections 1780 and 1782, Plaintiff and the California Class members seek damages in an amount to be proven at trial, an injunction to bar Defendant from continuing its deceptive advertising practices, and reasonable attorneys' fees and costs.

106.   THEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CLAIM FOR RELIEF
**Violation of the False Advertising Law, BUS. & PROF. CODE § 17500 *et seq.*
On Behalf of the California Class**

107.   Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

108.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

109.   Plaintiff brings this claim for violation of the False Advertising Law, BUS. & PROF. CODE § 17500 *et seq.* ("FAL"), on behalf of the California Class.

110.   The FAL makes it unlawful for a person, firm, corporation, or association to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the Products.

111.   At all relevant times, Defendant has engaged, and continue to engage, in a public advertising and marketing campaign representing that the Products are "Natural."

112.   The Products, in fact, contain non-natural ingredients; come from cows given unnatural recombinant Bovine Soatotropin ("rbST"); or based on methodologies to raise the cows and obtain their milk detailed above in paragraphs 39-40; or, does not meet the organic standard for cheese.

113.   Defendant's advertisements and marketing representations are, therefore, misleading, untrue, and likely to deceive reasonable consumers.

114.   Defendant engaged in its advertising and marketing campaign with intent to directly induce consumers, including Plaintiff and the California Class members, to purchase the Products based on false and misleading claims.

115.   In making and disseminating the statements alleged herein, Defendant knew or should have known the statements are untrue or misleading.

116.   Plaintiff and the California Class members believed Defendant's representations that the Products are "Natural." Plaintiff and the California Class members would not purchase the Products if they knew the Products contain non-natural ingredients.

117.   Plaintiff and the California Subclass members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Products as "Natural." Plaintiff and the California Class members pay for Products that are "Natural," but do not receive such Products.

118.   The Products Plaintiff and the California Class members receive are worth less than the Products for which they pay. Plaintiff and the California Class members pay a premium price on account of Defendant's misrepresentations that the Products are "Natural."

119.   Plaintiff and the California Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief enjoining Defendant from continuing to disseminate its untrue and misleading statements, and other relief allowable under Business and Professions Code section 17535.

120.     THEREFORE, Plaintiff prays for relief as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.***
**On Behalf of the California Class**

121.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

122.     Plaintiff brings this claim for violation of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* ("UCL"), on behalf of the California Class.

123.     The circumstances giving rise to Plaintiff's and the California Class members' allegations include Defendant's corporate policies regarding the sale and marketing of the Products.

124.     Under the UCL, "unfair competition" means and includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by" the FAL. Bus. & Prof. Code § 17200.

125.     By engaging in the acts and practices described herein, Defendant commits one or more acts of "unfair competition" as the UCL defines the term.

126.     Defendant committed, and continue to commit, "unlawful" business acts or practices by, among other things, violating the Washington Consumer Protection Act, the CLRA, the FAL, and Wisconsin common law, as described herein.

127.     Defendant committed, and continue to commit, "unfair" business acts or practices by, among other things:

   a.     Engaging in conduct for which the utility of the conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and the members of the California Class;

   b.     Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the California Class; and

   c.     Engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws that this Class Action Complaint invokes.

CLASS ACTION COMPLAINT
[29]

128.    Defendant commits unlawful, unfair, and/or fraudulent business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and do deceive reasonable consumers, including Plaintiff and the California Class members.

129.    As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include making false and/or misleading representations that the Products are "Natural."

130.    Plaintiff and the California Class members believed Defendant's representations that the Products are "Natural." Plaintiff and the California Class members would not purchase the Products, but for Defendant's misleading statements that the Products are "Natural."

131.    Plaintiff and the California Class members are injured in fact and lose money as a result of Defendant's conduct of improperly describing the Products as "Natural." Plaintiff and the California Class members pay for Products that are "Natural," but do not receive Products that are "Natural." Instead, Plaintiff and the California Class members receive Products that contain non-natural ingredients, or come from cows given unnatural recombinant Bovine Soatotropin ("rbST"); or use the methodologies to raise the cows and obtain their milk detailed above in paragraphs 39-40; or, does not meet the organic standard for cheese.

132.    Plaintiff and the California Class members seek declaratory relief, restitution for monies wrongfully obtained, disgorgement of ill-gotten revenues and/or profits, injunctive relief, and other relief allowable under Business and Professions Code section 17203, including but not limited to enjoining Defendant from continuing to engage in its unfair, unlawful, and/or fraudulent conduct alleged herein.

133.    THEREFORE, Plaintiff prays for relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
**Fraud under Wisconsin Common Law**
**On Behalf of the Nationwide Class**

134.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

135.     As discussed above, Defendant provides Plaintiff and the Nationwide Class members with false or misleading material information and fails to disclose material facts about the Products, including, but not limited to the claims regarding the "Natural" quality. These misrepresentations and omissions are made with knowledge of their falsehood.

136.     The misrepresentations and omissions made by Defendant, upon which Plaintiff and the Nationwide Class members reasonably and justifiably rely, are intended to induce and actually induce Plaintiff and the Nationwide Class members to purchase the Products.

137.     The fraudulent actions of Defendant cause damage to Plaintiff and the Nationwide Class members, who are entitled to damages and other legal and equitable relief as a result.

138.     As a result of Defendant's wrongful conduct, Plaintiff and the Nationwide Class members have suffered and continue to suffer economic losses and other general and specific damages, including amounts paid for the Products and any interest that would have been accrued on these monies, all in the amount to be determined at trial.

139.     THEREFORE, Plaintiff prays for relief as set forth below.

**SIXTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**On Behalf of the Multi-State Class**

140.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

141.     Plaintiff and the Multi-State Class members form a contract with Defendant at the time they purchase the Products. As part of that contract, Defendant represents that the Products are "Natural," as described above. These representations constitute express warranties and became part of the basis of the bargain between Plaintiff and the Multi-State Class members, on the one hand, and Defendant, on the other.

142.    Defendant makes the above-described representations to induce Plaintiff and the Multi-State Class members to purchase the Products, and Plaintiff and the Multi-State Class members rely on the representations in purchasing the Products.

143.    All conditions precedent to Defendant's liability under the above-referenced contract has been performed by Plaintiff and the other Multi-State Class members.

144.    Defendant breaches its express warranties about the Products because, as alleged above, the Products are not "Natural." Defendant breaches the following state warranty laws:

A.    Alaska Stat. section 45.02.313;

B.    A.R.S. section 47-2313;

C.    A.C.A. section 4-2-313;

D.    Cal. Comm. Code section 2313;

E.    Colo. Rev. Stat. section 4-2-313;

F.    Conn. Gen. Stat. section 42a-2-313;

G.    6 Del. C. section 2-313;

H.    D.C. Code section 28:2-313;

I.    O.C.G.A. section 11-2-313;

J.    HRS section 490:2-313;

K.    Idaho Code section 28-2-313;

L.    810 ILCS 5/2-313;

M.    Ind. Code section 26-1-2-313;

N.    K.S.A. section 84-2-313;

O.    KRS section 355.2-313;

P.    11 M.R.S. section 2-313;

Q.    Mass. Gen. Laws Ann. ch. 106 section 2-313;

R.    Minn. Stat. section 336.2-313;

S.    Miss. Code Ann. section 75-2-313;

T.    R.S. Mo. Section 400.2-313;

1    U.    Mont. Code Ann. Section 30-2-313;

2    V.    Neb. Rev. Stat. section 2-313;

3    W.    Nev. Rev. Stat. Ann. section 104.2313;

4    X.    RSA 382-A:2-313;

5    Y.    N.J. Stat. Ann. section 12A:2-313;

6    Z.    N.M. Stat. Ann. section 55-2-313;

7    AA.   N.Y. U.C.C. Law section 2-313;

8    AB.   N.C. Gen. Stat. section 25-2-313;

9    AC.   N.D. Cent. Code section 41-02-30;

10   AD.   ORC Ann. section 1302.26;

11   AE.   12A Okl. St. section 2-313;

12   AF.   Or. Rev. Stat. section 72-3130;

13   AG.   13 Pa.C.S. section 2313;

14   AH.   R.I. Gen. Laws section 6A-2-313;

15   AI.   S.C. Code Ann. section 36-2-313;

16   AJ.   S.D. Codified Laws, section 57A-2-313;

17   AK.   Tenn. Code Ann. section 47-2-313;

18   AL.   Tex. Bus. & Com. Code section 2.313;

19   AM.   Utah Code Ann. section 70A-2-313;

20   AN.   Va. Code Ann. section 59.1-504.2;

21   AO.   Wash. Rev. Code Ann. section 62A.2-313;

22   AP.   W. Va. Code section 46-2-313;

23   AQ.   Wyo. Stat. section 34.1-2-313.

24   145.   As a result of Defendant's breaches of express warranty, Plaintiff and the other

25   members of the Multi-State Class are damaged in the amount of the purchase price they pay for

26   the Products, in amounts to be proven at trial.

27   146.   On September 19, 2016, a reasonable time after she knew or should have known

28

of such breach, Plaintiff, on behalf of herself and the other members of the Multi-State Class, sent a notice letter to Defendant which provided notice of Defendant's breach and demanded Defendant correct, repair, replace, or otherwise rectify the breach complained of herein. The letter also stated that if Defendant refused to do so, a complaint would be filed seeking damages. Defendant failed to comply with the letter.

147.     THEREFORE, Plaintiff prays for relief as set forth below.

**SEVENTH CLAIM FOR RELIEF**
**Unjust Enrichment under Wisconsin Common Law**
**On Behalf of the Nationwide Class in the Alternative**

148.     Plaintiff incorporates and realleges the paragraphs above as if fully set forth herein.

149.     Plaintiff asserts this claim in the alternative to the above-listed claims.

150.     Plaintiff, on behalf of herself and consumers nationwide, brings a common law claim for unjust enrichment.

151.     Defendant's conduct violates, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

152.     Defendant's unlawful conduct, as described in this Complaint, allows Defendant to knowingly realize substantial revenues from selling its Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Nationwide Class members, and to Defendant's benefit and enrichment.  Defendant thereby violates fundamental principles of justice, equity, and good conscience.

153.     Plaintiff and Nationwide Class members confer significant financial benefits and pay substantial compensation to Defendant for the Products, which are not as Defendant represents them to be.

154.     Under Wisconsin's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Nationwide Class members'

CLASS ACTION COMPLAINT
[34]

1  overpayments.

2  155.  Plaintiff and Nationwide Class members seek disgorgement of all profits resulting

3  from such overpayments and establishment of a constructive trust from which Plaintiff and

4  Nationwide Class members may seek restitution.

5  **PRAYER FOR RELIEF**

6  WHEREFORE, Plaintiff, on behalf of herself and the Class members, respectfully

7  requests that the Court enter an Order:

8  A.  Certifying the Class pursuant to Federal Rule of Civil Procedure 23 and adjudging

9  Plaintiff and her counsel adequate Class representatives;

10  B.  Declaring Defendant financially responsible for notifying the Class members of

11  the pendency of this suit;

12  C.  Requiring Defendant to pay Plaintiff and the Class members economic, monetary,

13  consequential, compensatory, or statutory damages, whichever is greater, and, if Plaintiff proves

14  Defendant's conduct was willful, awarding Plaintiff and the Class members exemplary damages

15  to the extent to which the law provides;

16  D.  Awarding restitution and disgorgement of all monies Defendant acquired by

17  means of any act or practice this Court declares was wrongful, or other appropriate remedy in

18  equity, to Plaintiff and the Class members;

19  E.  Awarding declaratory and injunctive relief as the law and equity permit,

20  including: enjoining Defendant from continuing the unlawful practices set forth above; directing

21  Defendant to rectify or cease its deceptive and misleading marketing campaign, in which it

22  describes the Products as "Natural" yet the Products contain non-natural ingredients; or come

23  from cows given unnatural recombinant Bovine Soatotropin ("rbST"); or use the methodologies

24  to raise the cows and obtain their milk detailed above in paragraphs 39-40; or, does not meet the

25  organic standard for cheese.

26  F.   Directing Defendant to disgorge all monies Defendant acquired by means of any

27  act or practice this Court declares was wrongful;

28  CLASS ACTION COMPLAINT
[35]

G.     Awarding Plaintiff, individually and on behalf of the Class members, her expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses to the extent to which the law provides;

H.     Awarding to Plaintiff, individually and on behalf of the Class members, pre- and post-judgment interest to the extent the law allows; and

I.     For such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and the Class members hereby demand a trial by jury on all claims so triable.

Date: May 19, 2017                             Respectfully submitted,

                                                    */s/ Michael R. Reese*
                                                    Michael R. Reese
                                                    *mreese@reesellp.com*
                                                    **REESE LLP**
                                                    100 West 93rd Street, 16th Floor
                                                    New York, New York 10025
                                                    Telephone: (212) 643-0500
                                                    Facsimile: (212) 253-4272

                                                    Melissa Wolchansky
                                                    *wolchansky@halunenlaw.com*
                                                    Charles Moore
                                                    *moore@halunenlaw.com*
                                                    **HALUNEN LAW**
                                                    1650 IDS Center
                                                    80 South Eighth Street
                                                    Minneapolis, Minnesota 55402
                                                    Telephone: (612) 605-4098
                                                    Facsimile: (612) 605-4099

                                                    *Counsel for Plaintiff and the Proposed Class*

CLASS ACTION COMPLAINT
[37]